## MARGARET W. MILBANK v. DEPARTMENT OF REVENUE

M. Chapin Milbank, Brown, Schlegel, Milbank, Wheeler and Jarman, Salem, represented plaintiff.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered May 23, 1974.

CARLISLE B. ROBERTS, Judge.

The plaintiff appealed from defendant's order No. VL 73-242 (dated May 10, 1973), relating to the true cash value on January 1, 1972, of real property located in Josephine County, Oregon, referred to as Assessor's Account No. 36-05-05-34-7-100, Code 1. The real property in question is a 10.35-acre portion of a tract of approximately 12.92 acres located within the city limits of the City of Grants Pass, which had been placed on the assessment roll at a value of $22,960. The Department of Revenue found that the plaintiff had taken the proper steps to have the 10.35 acres (all but the homesite) designated by the county assessor as "open space land" in accordance with the provisions of Or Laws 1971, ch 493, codified as ORS 308.740

et seq. (which became law on September 9, 1971), and that, as open space land, its value was $500 per acre.

Plaintiff contends that the defendant erred in finding that the value of the subject property designated as open space land should be $500 per acre for the reason that there is no evidence that the property, as open space, had any value, and that such finding was directly contrary to the regulations and directives issued by the Department of Revenue.

ORS 308.740 defines "open space land" to include two categories: (a) any land area so designated by an official comprehensive land use plan adopted by any city or county; or (b) any land area, the preservation of which in its present use would conserve and enhance natural or scenic resources or would protect air or streams or water supplies, and the like. ORS 308.745 is a public policy statement of the legislature; i.e., that it is in the best interest of the state to establish and preserve open space lands for reasons of public health. It sought, by this act, to prevent forced conversion of such lands on account of economic pressures on the owners of the land, caused by the "assessment thereof for purposes of property taxation at values incompatible with their preservation as such open space land, * * *." The Department of Revenue is required to make rules and regulations necessary or desirable to achieve effective administration of the act. ORS 308.790.

The 12.92-acre tract includes the site of plaintiff's residence at its highest elevation. The property is situated on Greenfield Road (a frontage road, north of the freeway on the north side of Grants Pass). The land slopes gently to the south and affords a view of the city. A little over one acre is irrigated and the

southwest corner is cut by an irrigation canal. A sewer easement runs across the west side. According to the assessor's office, the highest and best use of the property, if it were not in open space, would be for subdivision development. It adjoins Oak Hill Addition, which is zoned R-12, and, because of its proximity, there is a possibility that the land would be suited for commercial use in the future.

Upon making application to the assessor for open-space-land classification, the plaintiff described the land as a foothill area, with wild grass and some oak and madrona trees. Private forest land is found on the east boundary. Plaintiff described the current open space use or uses of the land as: "Open or buffer space with grass mowed annually for fire protection to upland buildings and private forest land. Future orderly urban development under long range city and county planning publications when city water becomes available. Scenic view purposes." The assessor placed an open space value upon the property as of January 1, 1972, at $6,600, or approximately $638 per acre. As has been stated, the defendant reduced the value to $500 per acre. The plaintiff seeks a valuation of zero dollars.

The City Council of Grants Pass rezoned the 10.35 acres to Open Space Zoning in accordance with the city's zoning ordinance on March 15, 1972, but there is no evidence that the city adopted an official, comprehensive land use plan for open space pursuant to ORS 308.740 (1)(a). The order of approval contains an analysis of the application, showing that the City Planning Commission recommended favorable action, after examining the items listed in ORS 308.740 (1) (b), finding that approval would conserve or enhance

scenic resources and would promote conservation of soils, wetland, etc., and of landscaped areas, enhancing the value of abutting or neighboring property.

ORS 308.765 of the open space lands law provides:

"In determining the true cash value of open space land which has been classified as such under ORS 308.740 to 308.790, each year the assessor shall, notwithstanding the provisions of ORS 308.-205 [which define "true cash value" for assessment purposes]:

"(1) *Assume the highest and best use of the land to be the current open space use,* such as park, sanctuary or golf course, and he shall not consider alternative uses to which the land might be put." (Emphasis supplied.)

The words "current" and "current open space use" appear to be defined in ORS 308.740:

"(2) 'Current' or 'currently' means as of next January 1, on which the property is to be listed and valued by the county assessor under ORS chapter 308."

On April 11, 1972, Mr. D. M. Fisher, Administrator of the Assessment and Appraisal Division, Department of Revenue, issued to all county assessing officials guidelines for the appraisal of open space land. The following is quoted from this set of instructions:

"1. The land which is the subject of classification will be appraised at market value both for its highest and best use and also for the current open space use upon which approval by the granting authority was based. The assessor shall assess the land on the basis of its open space use and, for each year that the land is classified, he shall also enter on the assessment roll, as a notation, the market value of the land were it not so classified.

"* * * * *

"3. In determining the true cash value of open space land the assessor must appraise the land as though its highest and best use is the open space use for which the land is classified. This means that he shall not consider alternative uses to which the land might be put and must eliminate from his estimate of value all indications of value for other potential uses.

"The uses for which open space land is classified will fall into one of the following categories:

"a. *Those uses which can, under prudent management, be expected to produce an economic return to an owner of the land.*

"This category will include golf course use, farm or grazing use, etc. * * * Where the land under appraisal is zoned for a use for which comparable market data is available, then the appraiser should utilize, to the extent possible, the standard approaches to value. * * *

"* * * * * *

"b. *Those uses which, under prudent management, cannot be expected to produce an economic return to the owner of the land.*

"This category will usually include such uses as conservation, wild life sanctuaries, etc. Open space land restricted to uses that cannot be expected to yield an economic return to an owner *would have no taxable value.*" (Emphasis supplied.)

It appears that plaintiff's assertion of a zero valuation relies on this last instruction. However, on October 9, 1973, defendant's officer, Mr. Fisher, issued a "Clarification of Guidelines for Appraisal of Open Space Land" in which the two categories above described were again listed and questions were answered with respect to the meaning of "economic return" as used in the guidelines. The last two paragraphs of the release contain the following:

"Unimproved land frequently provides no

return to an owner in the form of dollar rent. However, it does have value arising out of current and anticipated use of the property and from current and anticipated enjoyment of amenities. For example, unimproved land used as buffer land though not used in the active sense may yield benefits to the owner in the form of amenities such as improved fire protection, protection from obstructions to view, protection from noise or other forms of pollution, protection from encroachment of incompatible uses such as lower quality residential developments, junk yards, etc.; or it may increase enjoyment to the owner through providing more spacious living, privacy, status, etc.

"The term 'economic return' in the guidelines is intended to mean all economic benefits both in dollars and enjoyment accruing to an owner of the property."

It would appear from this that the defendant would not sanction the use of a zero value upon the subject property since, patently, there is a benefit to the plaintiff in the open space as a buffer zone, protection from obstructions to view, protection from noise or other forms of pollution, protection from encroachment of incompatible uses, and enjoyment to the owners through providing more spacious living, privacy, and the like.

Mr. Charles C. Hodgson, Property Appraiser for the Grants Pass District Office of the Assessment and Appraisal Division, Department of Revenue, testified on behalf of the defendant. The appraiser set out to "formulate a basis for the assessment of the subject property (36 05 05 CD Tax Lot 100) classed open space under ORS 308.740 to ORS 308.790." It was his duty to follow the instructions of the Department of Revenue in its release of April 11, 1972, relating to the appraisal

of open space land, with its two categories of uses, modified by the release of October 9, 1973, with its statement that "[t]he term 'economic return' in the guidelines is intended to mean all economic benefits both in dollars and enjoyment accruing to an owner of the property." (The defendant's power to guide and direct the county assessor with regard to the valuation of property is detailed in ORS chapter 306. See particularly ORS 306.111, 306.120, and 306.220.)

In his written appraisal report, the appraiser stated:

"Because the appraisal problem is confined to land which under prudent management *does not produce a net income stream,* the method employed had been limited to the market data approach. *No sales of property classified open space are known.* Sales of property which are similarly restricted from development and change of use were used as comparables. The purpose for which each property was purchased and the current use of the subject property shows a similarity of use which was considered indicative of comparability between the two." (Emphasis supplied.)

The assessor noted that the copy of the application for a special assessment of the subject property gave the plaintiff's reasons for deeming the land to come under the principle of the statute and listed the uses as: (1) "Open or buffer space with grass mowed annually for fire protection to upland buildings and private forest land." (2) "Future orderly urban development under long range city and county planning publications when city water becomes available." (3) "Scenic view purposes." Accordingly, the appraiser sought sales of other properties which could come within the purposes described. He testified as to three

such "comparable" properties and made his position clear in the face of cross-examination.

The first comparable property was one acre, sold in August 1972, for $1,600. It was bought by an individual who owned approximately three acres adjoining. The acre had been listed for $3,500 but could not be sold for that figure because it did not meet requirements for a subsurface sewage system. The purpose of the purchase was to serve as a buffer between the existing site of the purchaser and the street. The sales price was "adjusted down" by the appraiser for conditions of the sale, for time of sale in relation to the assessment date, and for size. It indicated that a per acre price of the subject property would be $680 per acre.

The second comparable was a tract of 1.2 acres, sold in February 1973, for $2,200, the purpose of the purchase being to add space to an existing site which had been denied a septic tank permit. The parcel is on an undeveloped road about four miles from the subject. The acre price is $1,833 per acre. Adjustments for size and location (proximity to the business community) gave an indicated value for subject property of $750 per acre.

The third comparable was a tract of 2.16 acres, sold in February 1973, for $3,200. This was the remaining portion of an acreage which was developed as a subdivision about eight years before. The purchase in 1973 was by an adjoining owner. The appraiser testified that the land was too wet and too low to be developed eight years ago and, even if sewers were made available, it would not be a desirable plot for a development because of the drainage problem. The

land is mostly covered with vines and brush. The purpose of the sale and purchase was to promote and insure privacy. The sale price per acre was $1,480. A 65 percent adjustment of the indicated sale price per acre was used to recognize the difference in size as compared to the subject property and there was a further upward adjustment to recognize that the area development is less desirable than the area of the comparable, and that the city is more easily reached from the subject property. This resulted in an indicated value of $1,100 per acre for the subject property.

The appraiser also offered a so-called "comparable" which proved to be only an offer to purchase. This was rejected by the court as too speculative for consideration. (Even the best of completed comparable sales are apt to contain an over-full quota of adjustments which are subjective in nature, diminishing their usefulness.)

Defendant's witness testified that the first and second comparable are more similar to the subject property, both in location and physical characteristics. The second sale required the least adjustment and had been relied upon most heavily for the conclusion of a value of $750 per acre for the subject property as of January 1, 1973. Upon being adjusted for time, pursuant to studies made in the Josephine County Assessor's office, the appraiser found a true cash value for the subject property as of January 1, 1972, of $6,600 ($638 per acre, rounded).

Plaintiff offered no testimony but depended upon her counsel's construction of the law and the cross-examination of the defendant's only witness. The plaintiff's counsel contends that the statute is designed to

exonerate from all property taxation land which meets the "open space" description and has been approved as such by the city or county and where there is no income stream actually or in contemplation. Counsel points out that in its declaration of policy, ORS 308.745,

> "* * * [t]he legislature further declares that it is in the public interest to prevent the forced conversion of open space land to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such open space land, and that assessment practices must be so designed as to permit the continued availability of open space lands for these purposes, and it is the intent of ORS 308.740 to 308.790 to so provide."

He argued that to take any other view than that asserted by him would defeat the purpose of the measure and vitiate the legislative intent. He contended that, with the constant increase in property values which has been experienced in Oregon over the last few years, a property owner may soon find he is unable any longer to preserve the property as open space and there will be a forced conversion of the land to more intensive use.

The defendant Department of Revenue found that the assessor's office had carried out the requirements of the statute but that the value of the subject property should be reduced to $500 per acre.

In the trial of the matter before the Tax Court, the burden of proof fell upon the plaintiff, requiring a preponderance of the evidence. ORS 305.427.

■ Upon reading the act as a whole, the court generally agrees with the plaintiff's interpretation as

to intent and effect. However, there is no clear mandate in the act that an open space land automatically is to be deemed valueless and untaxable. There is only a change in the assessor's approach to value in the application of the principle of highest and best use — "[t]he most profitable *likely* use to which a property can be put." (See American Institute of Real Estate Appraisers, *Appraisal Terminology and Handbook* 99 (5th ed 1967).)

The principle of highest and best use is ordinarily and regularly applied by appraisers. It is particularly significant in those instances where a landholder allows land to lie idle in the middle of a thriving residential or commercial area, or holds it for farming when it is surrounded by skyscrapers, or in some other way thwarts the "market." Its effect can be modified by governmental zoning or, as in the present case, by a statute, presumably constitutional, which gives the landowner an option to reduce his taxes so long as he is willing to carry out a statutory legislative policy.

This pattern is also applied to farm use in ORS 308.345 (2) and forest land in ORS 321.617 (3) and 321.810. In no instance has the provision been interpreted as leading to complete exemption. It may be, as plaintiff suggests, that the legislature has here missed the mark and failed to supply a sufficient inducement to achieve its goal. However, there is no way in which the indefinite instruction in ORS 308.745 ("assessment practices must be so designed * * *") can prevail over the specific requirement of ORS 308.765 (the only property value measuring device in the act) that the assessor shall assume the highest and best use to be the current open space use.

The "current use" of the land, found by the city or county authority to justify its classification as open space land, is substituted for highest and best use and, it follows, the demonstrable market value for such open space use must be followed.

The appraiser has met the requirements and has found in the market examples of lands reasonably similar in use, restricted as to improvements, bought and sold in arm's-length transactions. The plaintiff has shown nothing to the contrary.

The defendant's order is affirmed.